THE FARRELL FOUNDRY & MACHINE COMPANY v. THE
PRESTON NATIONAL BANK OF DETROIT, THE
GEORGE T. SMITH MIDDLINGS PURIFIER
COMPANY, RUFUS H. EMERSON,
AND ZENAS C. ELDRED.

*Chattel mortgage—Assignment of open accounts—Fraudulent con-
veyances—Assignment for benefit of creditors.*

1. This case is ruled in the main by *Preston Nat'l Bank v. Puri-
   fier Co.*, 84 Mich. 364, where it was held that How. Stat. §
   6193, providing for the filing of chattel mortgages, applies only
   to mortgages of goods and chattels which are capable of
   delivery, and not to an assignment of open accounts.

2. Where, at the time of an assignment for the benefit of creditors,
   a creditor has any special rights peculiar to himself, which
   have not become a fixed lien at the time of the assignment,
   they are transferred to and must be enforced through the
   assignee, under How. Stat. § 8741, which provides that every
   such assignment shall confer upon the assignee the right to
   recover all property, or right or equities in property, which
   might be reached or recovered by any of the creditors of the
   assignor.

Appeal from Wayne. (Hosmer, J.) Submitted on briefs
November 1, 1892. Decided December 2, 1892.

Bill to set aside an assignment of open accounts as
fraudulent as to creditors, and for a *pro rata* distribution
of the assigned property. Complainant appeals. Decree
dismissing bill affirmed. The facts are stated in the opinion,
and in 84 Mich. 364.

*Taggart & Denison,* for complainant, contended:

1. Complainant's claim, as set forth in its bill, is not *res judicata;*
   citing Black, Judg. § 585; *Richardson v. Larpent,* 2 Younge
   & C. Ch. 507.

2. The equity of the bill, as an independent consideration, rests

upon the proposition that "a deed, not at first fraudulent, may afterwards become so by being concealed or not pursued, by which means creditors are drawn in to lend their money;" citing *Hungerford v. Earle*, 2 Vern. 261; *Scrivenor v. Scrivenor*, 7 B. Mon. 374; *Hildeburn v. Brown*, 17 Id. 779; *Hafner v. Irwin*, 1 Ired. Law, 490; *Bank v. Housman*, 6 Paige, 526; *Coates v. Gerlach*, 44 Penn. St. 43; *Hilliard v. Cagle*, 46 Miss. 309; *Gill v. Griffith*, 2 Md. Ch. 270; *Neslin v. Wells*, 104 U. S. 428; *Blennerhassett v. Sherman*, 105 Id. 100.

*J. G. Dickinson (John D. Conely,* of counsel), for defendant the Preston National Bank, contended for the doctrine of the opinion.

LONG, J. This is an appeal from the decree of the court below sustaining a demurrer to complainant's bill, which was filed in the circuit court for Wayne county, in chancery.

The bill sets out substantially that the complainant is a corporation organized and existing under the laws of the state of Connecticut; that the George T. Smith Middlings Purifier Company is a corporation organized under the laws of this State, with its principal office at Jackson; that on January 14, 1890, the Purifier company made a common-law assignment for the benefit of its creditors to defendants Emerson and Eldred, and that such proceedings were thereafter had in the matter that the same was removed to the circuit court for the county of Wayne, in chancery, and is now there pending; that said Emerson and Eldred were appointed receivers in the matter of such assignment, and are now acting as such; that the complainant is a creditor of this Purifier company in the sum of $17,761, said indebtedness accruing for material sold to the said company; that among the assets of the Purifier company were certain accounts against various persons throughout the United States, being debts for merchandise theretofore sold to such persons by the company, and a large part of which was uncollectible and worthless, and a part being good and collectible, and of

such latter the complainant states, on information and belief, there was from $50,000 to $100,000, or thereabouts; that the total amount of the debts of said company at the time of the assignment was about $300,000 or $400,000, and that the liquidation of the Purifier company has so far proceeded that it is charged, on information and belief, that the complainant and other creditors similarly situated will receive therefrom only a small dividend upon their claims, not over 15 or 20 per cent., unless the complainant have the relief prayed for in this bill; that among the debts against the Purifier company was one of $88,000, in favor of the Preston National Bank of Detroit, a corporation organized under the national banking law; that such bank claimed to hold as security for such debt a paper in the words and figures as follows:

"WHEREAS, The George T. Smith Middlings Purifier Company is indebted to the Preston National Bank on its own paper, and for indorsements on commercial paper, and will hereafter be likewise indebted; and—

"WHEREAS, The George T. Smith Middlings Purifier Company has on its books not less than $300,000 in good and collectible accounts:

"Now, therefore, said George T. Smith Middlings Purifier Company does hereby set aside and assign to the Preston National Bank of Detroit $150,000 of such good and collectible accounts now existing, or shall hereafter accrue or be acquired in the conduct of the business of the said George T. Smith Middlings Purifier Company, which said $150,000 of the good and collectible accounts shall be held by said Preston National Bank as collateral for any indebtedness of any kind or nature which may now or hereafter be due and payable from said George T. Smith Middlings Purifier Company to said Preston National Bank of Detroit.

"THE GEORGE T. SMITH MIDDLINGS PURIFIER CO.

"By GEO. T. SMITH, President and Treasurer.
"Dated DETROIT, MICH., July 10, 1889."

The complainant further charges that the Preston National Bank claimed thereunder the right to control and collect $150,000 of said good and collectible accounts,

and, for the purpose of establishing that claim and enforcing such security, said bank, on or about March 15, 1890, filed its bill of complaint in the circuit court for Wayne county, in chancery, against the Purifier company, Emerson, Eldred, and George T. Smith, as defendants; that answers were filed to said bill, and on August 7, 1890, a decree made which, in effect, adjudged, as against the receivers, that said bank was entitled to priority of payment over all the other creditors out of the proceeds of the collection of accounts of the Purifier company, said decree being afterwards on appeal affirmed in the Supreme Court. 84 Mich. 364.

Complainant charges in its bill that, before extending to the Purifier company the credit, it inquired concerning the assets and responsibility of said company, and it was represented to complainant by the company that it had among its assets about $500,000 or more of debts and accounts owing to it, and that its total liabilities, aside from capital stock, were less than $67,000; that such condition of things was from time to time represented to it as continuing up to the last item of credit; that the statements so made were false; that the Purifier company did not have anywhere near the amout of credits claimed, and that its debts were more than twice as large as stated; that the property of the Purifier company at the various times the complainant gave it credit consisted of three classes,—its real estate or plant, the materials and machinery manufactured or in process of manufacture, and the debts due the company; that the real estate and plant consisted largely of special machinery adapted for the business of the company, and nothing else; that the materials and products of its manufacture were designed for special purposes only; and such plant and all other property, except the debts due it, were of such a kind as always

depreciate enormously, and in many instances prove worthless, when the liquidation of the business is attempted.

It is also charged, upon information and belief, that, when the assignment of July 10, 1889, was made by George T. Smith to the Preston National Bank, it was agreed between them that said assignment should not be put on record or filed, or in any way be disclosed to the public; that the same was accordingly secretly held by said bank, and its existence concealed from the commercial public, until January 11, 1890, when the same was filed in the office of the city clerk at Jackson; that such creation and holding of a secret lien upon all of the most available property of the company, as against the company, as against the complainant and others, who gave credit relying upon the apparent ownership by the company of its accounts, was a fraud in law and in fact; and that such assignment was and is fraudulent and void, as against complainant.

It is further alleged that, during the time while said bank was so secretly holding said assignment and complainant was giving credit in ignorance thereof, the annual statements of said company were on file showing the ownership by it of a large amount of accounts, and said bank must have known, and complainant is informed and believes it did in fact know, that the public was giving credit to said company in reliance on the apparent ownership by it of said accounts; that no credit would have been given if the fact of such assignment became public; that giving publicity thereto would have the effect, as it did, to force the suspension of such company; and that it was necessary to keep such assignment secret in order that said company might continue to do business and buy of others on credit property which in fact was used to pay said bank's debts.

Upon information and belief it is further charged that, at the time of making the aforesaid assignment to the bank, the Purifier company was hopelessly insolvent, its

assets being entirely insufficient to pay its debts; that the conduct of said bank, in taking the assignment, holding the same secretly, and then enforcing the same as a lien upon the accounts subsequently accruing, was intended to, and in fact did, have the effect to take complainant's property and apply it to the payment of the debts to the bank, for the reason that such subsequent accounts, upon which the lien is now claimed, were in part the product of the resale by the Purifier company of the property sold to it by the complainant, and under the circumstances such conduct was fraudulent against the complainant and others similarly situated.

Complainant alleges that it filed proof of its claim under the statute in the matter of such assignment in the office of the clerk of Jackson county, February 12, 1890. The bill then sets out many of the creditors of and the amount owing each by the Purifier company, and claims that, with respect to the matters set forth in the bill as grounds of relief, they are situated similarly to the complainant, and entitled, respectively, to the relief prayed, for the same reason that the complainant is entitled thereto; and that accordingly they have to bear their proportionate share of the expenses of this suit, and that the bill is filed in their behalf, as well as in the behalf of the complainant; but it is expressly alleged, upon information and belief, that the grounds of relief in equity herein set out are not common to all the creditors of the Purifier company.

The relief prayed for is that the receivers of the Purifier company be ordered to give no priority to the claim of the bank over the complainant, but to distribute the property and pay dividends *pro rata* to the complainant and the bank without regard to the assignment of July 10, 1889, whatever be the effect thereof as against the creditors in general.

The court below was not in error in sustaining the

demurrer and dismissing complainant's bill. The only special equity claimed by the bill is that it gave credit to the Purifier company in reliance upon the apparent ownership by that company of a large amount of accounts receivable, and that, except for such apparent ownership, it would not have given the credit; and that the Preston National Bank, knowing that credit was being so given, concealed its agreement, and aided the Purifier company to keep up a fictitious credit, thereby misleading complainant to its injury.

In the case referred to (*Preston Nat'l Bank v. Purifier Co.*, 84 Mich. 364) it was settled that How. Stat. § 6193, providing for the filing of chattel mortgages, applies only to mortgages of goods and chattels which are capable of delivery, and not to an assignment of open accounts. One of the questions discussed in that case was whether the agreement was void as to creditors who became such between July 10, 1889, the date of the giving of the agreement referred to, and January 11, 1890, the date of filing in the city clerk's office. It was held that complainant in that case had a right to hold its security, and that it was not void as to creditors who became such between those dates. This was placed upon the ground that it was not such an instrument as section 6193 required to be filed in the city clerk's office. This ruling was supported by a large number of authorities, which are cited in that case at page 388. So it appears that two questions, at least, which are raised here, were settled in that case:

1. That the agreement was not an instrument which was required to be filed under the statute as a chattel mortgage.

2. That it was a valid and subsisting lien in the hands of the complainant, as against all creditors whose claims arose between the date of the execution and the date of filing.

Emerson and Eldred, who are the receivers, as stated in the present bill, were parties defendant to that bill, and alone appealed from that decree to this Court, where the decree was affirmed.

The present bill does not allege that the complainant had any lien on the accounts, but that it relied upon the apparent ownership in the Purifier company. Every other creditor might allege the same fact. It is not claimed that the complainant made any special inquiry about the accounts, but that the annual statements filed showed the ownership. We do not think this creates any such special equity in the complainant that the matter can be taken out of the hands of the assignees or receivers, and a bill filed by a general creditor. If any equity exists in this, it is common to all the creditors.

How. Stat. § 8741, provides that—

"Every such assignment shall confer upon such assignee the right to recover all property, or rights or equities in property, which might be reached or recovered by any of the creditors of such assignor."

It is claimed under this statute, by counsel for defendants, that if a creditor has any special rights of his own which are peculiar to himself, that have not become a fixed lien at the time of making the assignment, his rights are transferred to the assignee, and under the statute such special equities must be enforced through the assignee. We think counsel right in this contention. It was said in *Root v. Potter,* 59 Mich. 504:

"The assignment law regards the assignee as a trustee or representative of the creditors for all purposes auxiliary to the assignment, and, if creditors could sue also, it would create great confusion." See, also, *Scott v. Chambers,* 62 Mich. 532.

The complainant seeks by the present suit to enforce an equity against another creditor in the same assignment pro-

ceedings, without in any manner calling upon the receiver to commence proceedings for that purpose, and after the receivers have litigated the claims of the Preston National Bank through the courts, and in which the bank has sustained its claim as a lien against all the creditors generally. Complainant had filed its claim in the assignment proceedings within a month after the assignment was made, and yet in the suit against the receivers by the bank —the defendant in this bill—it does not appear that the receivers had any notice or knowledge that any of the creditors claimed any of the special equities now set up in this bill; and a general creditor cannot now litigate over again the questions settled in the former proceeding.

The decree of the court below must be affirmed.

The other Justices concurred.