MURDOCH *v.* WALLS.

1. Creditor's Bill—Fraudulent Transfer of Firm Assets — Death of Partner—Parties.

A firm creditor, after the death of one of the partners, may maintain a creditor's bill to reach firm assets fraudulently transferred by the deceased to his wife, and traced by complainant into the hands of the wife's executor.

2. Same—Administrator as Complainant.

Whether the deceased partner's administrator would, by virtue of his interest in having the partnership property applied to the relief of his estate from partnership obligations, be entitled to maintain such a bill,—*quære.*

Appeal from Houghton; Haire, J., presiding. Submitted June 9, 1899. Decided September 12, 1899.

Creditor's bill by Thomas Murdoch against William Walls, William H. Hosking, Jr., and John H. Rice. From an order overruling a demurrer to the bill, defendant Rice appeals. Affirmed.

*Dunstan & Hanchette,* for complainant.

*Chadbourne & Rees,* for appellant.

Hooker, J. The complainant's bill alleges:

1. That he is one of the surviving partners of a copartnership that consisted of Reid (deceased), Fischer, and himself.

2. That William Walls is survivor of himself and Isaiah C. Watson, deceased, formerly copartners.

3. That on July 16, 1889, Reid, Murdoch & Fischer recovered against Watson & Walls a judgment for upwards of $5,500, and that the same is now due and payable, execution having been duly issued, and returned unsatisfied.

4. That, at the time said judgment was rendered, Watson & Walls were in the mercantile business, and that divers persons were indebted to them in large amounts; that

Watson collected a large amount of money from said debtors, and invested it, with his own earnings, in the purchase of stock, in the name of his wife, Martha D. Watson.

5. That Martha D. Watson died about September 25, 1891, leaving a will, in which she bequeathed all of her property to John H. Rice.

6. That John H. Rice and James B. Sturgis were appointed executors of Martha D. Watson's estate, and filed an inventory containing a list of copper stocks, and no other property.

7. That on July 22, 1887, Watson & Walls sold to Hosking their stock of goods, and received notes as follows: One for $2,000, payable in 30 days, and one for $2,145.14, due in 90 days, both payable to Isaiah Watson; and that these were indorsed by Isaiah Watson to Martha Watson or order, and afterwards by her to other persons.

8. That, after the death of Martha Watson, her executors obtained a judgment upon said notes for $6,442.17, which is unsatisfied and undischarged.

9. That Isaiah Watson paid all the money that was paid for the stocks mentioned out of funds which belonged legally and equitably to the firm of Watson & Walls, and out of moneys received by him in compensation for services, and profits made by him, since the date of said judgment (against them), for the benefit of his wife, Martha Watson, in fraud of complainant, and without consideration.

10. That he indorsed the notes mentioned to her without consideration, and in fraud of complainant.

11. That Martha Watson had no property of any kind during her lifetime, except such as she had received without consideration from her husband.

12. That all of such transfers were merely colorable, and made with the design of placing said property beyond the reach of complainant.

13. That said Rice and William H. Hosking, Jr., have in their possession or control property which belonged to Isaiah Watson up to the time of his death, or in which he was in some way beneficially interested.

14. That Sturgis is dead, and Rice survives as executor.

The bill prays, among other things, that Rice be decreed to pay over and deliver to complainant sufficient of the money, stocks, judgment, etc., to pay complainant, and

for a receiver. Defendant Rice demurred to the bill, and, his demurrer being overruled, he has appealed.

It is contended by his counsel that the bill shows upon its face that it is an attempt to reach *only* the property of Isaiah Watson, and that the proper method should be for the administrator of Isaiah Watson to institute the proceeding, for and on behalf of all of the creditors of said Isaiah Watson, to reach this property. Upon the other hand, it is asserted that the bill alleges that property belonging to the firm of Watson & Walls is in the hands of the defendants, and that, as a creditor of said firm, complainant is entitled to have it applied to his claim, to the exclusion of the creditors of Watson.

The allegations of the bill show an ability to trace the notes received for the firm property, and perhaps other items, to Rice; and if, as stated, it is in fraud of the partnership creditors, we see no reason why equity may not require their application to complainant's debt. As contended by counsel for the defendant, the death of a party precludes the subsequent filing of a bill in behalf of his creditors to reach property fraudulently conveyed by him, and upon which such creditors have no lien; but such is not the case. The complainant professes to be able to trace, not Watson's property, but Watson & Walls' property, into the hands of the executor of a third person. If he is able to do this, we think a court of equity, and not the probate court, is the proper tribunal to restore it to the creditors of the partnership, which could hardly be done by the probate court in any proceeding that might be taken in the estate of Martha Watson. Whether an administrator of the estate of Isaiah Watson might file a bill to reach such property, we need not decide, as we are satisfied that it is not the exclusive remedy. The administrator of Isaiah Watson, if there be one, has no right to the possession of the partnership property as against Walls, nor has he any right to adjust the partnership affairs. It may be that his estate is interested in seeing partnership property applied to the relief of his estate

from partnership obligations by payment of such debts, and he might, perhaps, institute proceedings to require such application. But these questions are not here. We think that the complainant has the right to bring such a suit.

The decree is affirmed, with costs, and case remanded, with leave to answer under the rules and practice of the court.

The other Justices concurred.