SPITZLEY *v.* GARRISON.

FRAUD—IMPEACHMENT OF DECREE—EVIDENCE—SUFFICIENCY.

On appeal from a decree dismissing plaintiffs' bill to impeach the decree of the court in the case of *Nolan* v. *Garrison*, 151 Mich. 138, on the ground of fraud, evidence *held*, insufficient to establish fraud and collusion.

Appeal from Wayne; Hosmer, J. Submitted January 9, 1918. (Docket No. 15.) Decided June 3, 1918. Rehearing denied July 18, 1918.

Bill by Henry Spitzley and another against Earl D. Garrison and others to impeach a decree. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Prentis & Mulford* (*George H. Prentis*, of counsel), for plaintiffs.

*Walker & Spalding* (*H. E. Spalding*, of counsel), for defendants.

KUHN, J. The learned circuit judge who heard this cause filed a written opinion from which we quote the following:

"This bill is filed to impeach the decree of the Supreme Court in the case of *Nolan* v. *Garrison*, reported in the 151 Michigan, page 138. This confirms a decree of Judge Mandell and the facts are so fully stated by the late Justice MCALVAY in the opinion of the court that they may now be passed without further mention.

"Complainants as judgment creditors claim the decree is collusive and fraudulent and procured for the very purpose of defeating them in their endeavor to collect their judgment, and, secondly, that the property situated at the corner of Woodward and Baltimore aves., in Detroit, decreed to be the property of Mrs. Nolan, was permitted by her to stand of record as the property of her son at the time he obligated

himself to complainants and represented the property as his, and that she cannot now be heard to say it was hers, whether she actively participated in his representations or not. They ask further that the property situated on the corner of Jefferson avenue and Cass street, in Detroit, devised by John J. Garrison to defendant Frances A. Nolan for the term of her natural life with a remainder over to John W. Garrison and which was sold to Mrs. Nolan under an execution issued upon this decree and by her conveyed to the defendant Martha G. Lasier and which is now in Mrs. Lasier's possession, should be decreed to have been conveyed in fraud of complainants and that they may have recourse thereto for the satisfaction of their debt.

"(1) At the outset it is insisted that a bill of this nature must be filed by the administrator of John W. Garrison, citing section 9363, 3 Compiled Laws of 1897 as amended by Act No. 326 of the Public Acts of 1905 (3 Comp. Laws 1915, § 13859) ; this reads as follows:

" 'SEC. 16. When there shall be a deficiency of assets in the hands of an executor or administrator, and when the deceased shall in his lifetime have conveyed any real estate, or any right or interest therein, with intent to defraud his creditors, or to avoid any right, debt or duty of any person, or shall have so conveyed such estate, or so caused the same to be conveyed, that the deeds of conveyance are void as against creditors or so that the grantee of such estate is in equity a trustee for the benefit of creditors, the executor may and it shall be his duty to commence and prosecute to final judgment any proper action or suit at law or in chancery for the recovery of the same, and may recover, for the benefit of the creditors, all such real estate, and may also—and it shall be his duty to sue in any proper action at law or in equity and recover for all goods, chattels, rights, credits or assets of any kind which may have been so fraudulently conveyed by deceased in his lifetime, whatever may have been the manner of such fraudulent conveyance or which may have been so conveyed or caused to be conveyed, that the conveyance is void as against creditors, or so conveyed or caused to be conveyed that in equity the grantee is a trustee for the benefit of the creditors of the deceased.'

"This statute is not so broad as the assignment statute of like import, section 9541, 3 Compiled Laws

of 1897 (3 Comp. Laws 1915, § 13605). This provides:

> " 'Every such assignment shall confer upon such assignee the right to recover all property, or rights or equities in property, which may be realized or recovered by any of the creditors of such assignor.'

"If the legislature had intended to deprive those who claim special equities in the property, that is distinguished from creditors generally, the language used was not as apt as that used in the last quoted statute.

"In considering whether the complainants may file this bill it must be borne in mind that it is not alone the decree establishing the trust and declaring the Woodward avenue property to belong to Mrs. Nolan that deprives complainants of the fruits of their judgment. Mr. Garrison owned the Military Reservation property subject to his mother's life estate. Considering her great age at the time of the decree it must be apparent that it was ample to have satisfied complainants. If the debt to his mother had not existed complainants would not be before the court; under these circumstances it would appear complainants have a right to attack the personal decree even if it incidentally results in bringing into the hands of the personal representatives of Mr. Garrison assets for creditors. * * * It must be held that the bill is properly filed.

"Certainly a bill may be filed by complainants on the theory that by her conduct Mrs. Nolan has estopped herself from taking the Woodward avenue property to their prejudice. In the argument in support of their claim of fraud and collusion counsel lose sight of the force of the opinion of the Supreme Court in the case of *Nolan* v. *Garrison.* Doubtless the decree may, in the proper forum, be impeached but the sufficiency of the evidence offered to take the dealings between mother and son out of the statute of frauds if not found fraudulent is not open to question here. The legal conclusions arrived at by the Supreme Court in that case I think must stand until reversed by the court itself.

"It may be well to consider what manner of man John W. Garrison was. His mother's testimony

(printed record, pages 34 and 35) does not place him in an enviable light:

> " 'His habits were bad but he always was promising. His habits were bad—he would drink sometimes and have a spree and he was immoral. I knew it and I got him out of a good many scrapes since he was 18 years old; this continued until he was paralyzed. He would come to me when he was in a scrape to ask me to help him out and I always did. I gave him money and he would promise not to do it again, but he has kept right on.'

"'The testimony of both physicians examined in the case was that he had paresis. To contradict this there is no evidence and the suspicion is irresistible that his death came as the wages of sin, to use the expression of Paul.

"Counsel claim that he furnished the consideration for the purchase of the Woodward avenue lots and for the buildings he erected thereon, but of this there is no evidence. This contention is based upon the improbability of Mrs. Nolan's having sufficient money to make this investment. If there is evidence in this case that John W. Garrison received any considerable sum from his father's estate, I mean by way of personal property, it is not referred to in the briefs of counsel in such manner as to enable the court to declare what it is and a cursory examination of the file has not disclosed it. He received the rents and profits of the property in the Governor & Judges plan but those were not large if his letters are entitled to credence. That he kept any money from the time of his father's death to the date of the purchase of these lots, if he received any, would seem improbable. The presumption of the continuance would hardly seem to apply. It is not shown that he earned any considerable sum and his letters show it to have been somewhat of a struggle to keep his family in the style to which he was accustomed. All things considered, it seems to me highly improbable that he and not Mrs. Nolan paid for these lots. This becomes of large importance in consideration of the expressions in his letters and in furnishing a motive for his reference to the property as his mother's.

"It is urged that no defense is made in good faith

by the defendants in this case (*Nolan* v. *Garrison, supra.* The counsel are not directly attacked. The record in this respect is absolutely devoid of any testimony which can support this hypothesis; not a thing is pointed out that counsel for the defendants could have proved and failed to prove. It should be borne in mind that they had the benefit of such information as John W. Garrison could give them and that while he might not be trusted with the business he might have some memory of the past. In the absence of a scintilla of evidence that anything was omitted that should have been done by Mr. McNamara and Mr. Geer, and after a careful consideration of the briefs and the record nothing but the fact that opportunity and interest on the part of their clients might prompt such action on the part of counsel can be found to substantiate this claim.

"There is no merit in the claim that Mrs. Nolan's testimony was inadmissible. The Supreme Court decided against Mr. Geer's contention and no authority can be found to bring by judicial construction an incompetent within section 10212, 3 Compiled Laws of 1897, as amended (3 Comp. Laws 1915, § 12553), and place Mr. Garrison in the eyes of the law as one deceased. There may be good reasons for enacting such a law but up to the present time the legislature has not seen fit to exercise its power in this way.

"It is urged that the failure to attach in the deposition the original letters of John W. Garrison to his mother is evidence of fraud. These were all the written evidence of the trust relations and it is not surprising that counsel saw fit to keep them in his safekeeping; they were part of the record in the case and had counsel desired he could have compelled production of those on this hearing for examination, but I do not recall any such motion. If there existed any internal evidence of forgery or other fraud, counsel might have insisted upon bringing them before the court. In case the court found against the quitclaim deed, without these letters Mrs. Nolan's case must have failed. There is no need of reading from Judge McALVAY's decision as to the quitclaim deed. The evidence on which it is based is sufficient to permit this court to find it was executed and delivered and

later destroyed or lost by John W. Garrison, and I am satisfied that this is the truth. Mrs. Nolan, at the time of giving her testimony in the case of *Nolan* v. *Garrison,* was 79 years of age and upwards, and if her testimony is not as clear as it might have been and if it be not wholly consistent with the testimony given thereafter, it is small wonder. It is not to be denied that the effect of the decree sought to be impeached will be to deprive complainants of their debt, if not wholly, to a very large extent.

"It would seem that when those who were interested in John W. Garrison, aside from his wife, appreciated his condition and the condition of his affairs, they procured the appointment of a guardian. Mrs. Nolan was not here nor is there any evidence of her knowledge or participation. She came to Detroit to look after her own interests and if her testimony is worthy of credence, well she might. Her son owed her a large amount; he had placed a mortgage on her property of $14,000; $1,053.50 had been paid for interest out of money of right hers and Mr. Garrison had collected large sums of rent. I cannot follow counsel when they assert that the balance found due is fraudulently excessive. It is not clearly pointed out wherein it is wrong. The Supreme Court has held and I am bound by that, that the evidence as offered was sufficient to establish the debt, and I am satisfied of the correctness of the same.

"Of course in a case like the present where the decree cuts off the right of the creditor for the benefit of the mother it may be and is naturally open to suspicion but a careful consideration of the evidence leads to the conclusion that Mrs. Nolan has a meritorious case and that the decree cannot be impeached on the ground that it is the result of a fraudulent conspiracy between the parties. Nor does the giving of a deed to Mr. Garrison by Mrs. Nolan and the failure of Mrs. Nolan to record the subsequent quitclaim deed to her, give complainants a right to have recourse to the Woodward Ave. property because they extended credit on the face of his ownership. I think the law of Michigan is set out in the case of *Campbell* v. *Remaly,* 112 Mich. 214. Here a wife for several years failed to record a deed of land from her husband in whom

the title appeared of record. While the deed was unrecorded the husband obtained credit from the complainant by representing that he was the owner of this land. Complainants'. bill in aid of execution was dismissed, the court holding there was no evidence that there was any agreement or common purpose of the husband and wife to withhold the deed from record to enable him to obtain a false credit, and that his false claims of ownership were not brought home to the wife and are not binding upon her. It seems to me that case is parallel to this. I have found no evidence which would tend to show a guilty participation on the part of Mrs. Nolan. So far as the evidence shows Mr. Garrison was not engaged in any business which would require the extension of the credit and if I recall aright the consideration of the debt to Spitzley Bros. it was an extension of his credit to John Rivard. I may be in error in that regard but I think that was the purpose, so that the language of this decision is peculiarly apt in the present case.

"As the counsel justly say, whether the fact that the alleged perpetration of fraud, viz.: the appearance of the title of record in the person who makes the fraudulent representation results from the conveyance by the real owner or the neglect of the real owner to record the deed to herself is immaterial, in either case it is her conduct that makes the fraud possible.

"Now the decisions are conclusive that in order to assert a fraud on the part of the owner of the real title the owner of that title must participate in the fraud. Now, if Mrs. Nolan had been no relation to Mr. Garrison and had procured a judgment which was not questioned and had levied her execution upon the property known as the Military Reservation and had bid it in and now held it under her sheriff's deed no one for a moment would have considered that complainants could have maintained a bill against her. Under these circumstances where there was a deficiency of assets the representative of the deceased might have recovered the land if the deed was a nullity or the prices she paid for the land if the sale was valid, though the execution irregular. There would be no necessity for appealing to the equitable side of

the court and I cannot conceive how it should be considered under those circumstances that equity had jurisdiction. Yet this is precisely the position here; complainants have no standing except through the allegations of fraud and as these are unproven in my view of the case, their case must fall and the bill must be dismissed.

"As far as the Trust Co. is concerned I have forgotten the testimony as to the accounting; it seems to me that the probate court was the proper forum for that in any event, but if the counsel have reached a conclusion between themselves as to exactly what amount of property was held that belonged to John W. Garrison at the time of his death, why I am perfectly willing, if it is agreeable to counsel, that that should be embodied in the decree. I am not going to take testimony on that so far as that subject is concerned. I will refer it to a master if I have jurisdiction to consider it, of which I have very much doubt, because I think the probate court, as I say, is the proper forum for that. I dismiss the bill and allow the probate court to take that up. In any case it is not a large amount. It is a comparatively slight amount."

We find it unnecessary to pass upon the point first decided in the foregoing opinion. Upon the question of the jurisdiction of equity plaintiffs cite: *Rynearson* v. *Turner*, 52 Mich. 7; *Murdoch* v. *Walls*, 121 Mich. 164; *Kellogg* v. *Beeson*, 58 Mich. 340; *McFarlan* v. *McFarlan*, 155 Mich. 652; and *In re Sloman's Estate*, 186 Mich. 434. On the other hand it is pointed out by defendants that the statute, 3 Comp. Laws 1915, §§ 13859, 13860, distinctly negatives the right of the plaintiffs to maintain this suit in their own names. It is urged that as judgment creditors having no lien they are not entitled to maintain their bill, citing *Farrell Foundry & Machine Co.* v. *National Bank*, 93 Mich. 582, and *Beith* v. *Porter*, 119 Mich. 365.

After an exhaustive examination of this very voluminous record, we are well satisfied that a decision of

the case may very well rest upon the second point, to wit: That there is no evidence upon which the court might properly conclude that the decree in the case of *Nolan* v. *Garrison*, 151 Mich. 138, which was affirmed by this court, was obtained by fraud and collusion.

The decree dismissing the bill is affirmed, with costs.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.