(75 N. W. Rep. 795.)

---

THOMAS H. HEALD *vs.* ERIK YUMISKO, *et al.*

Opinion filed May 10th, 1898.

**Reference—Consent of Parties.**

> While, under our statute, in all cases except where a court may on its own motion refer a cause, the written consent of the parties is required, to authorize the court to send a case to a referee, yet where the order of reference recites that both parties in open court consented to the same, and the correctness of such recital is not questioned, no further or other written consent is is required.

### Reference to Take and Report the Evidence.

> Where, under a reference so made by consent of parties, the order also recites that the case is sent to the referee to take and report the evidence, the parties cannot afterwards be heard to say that this reference was a nullity because it was not a full reference under the statute.

### Public Lands—Boundaries and Subdivisions.

> Section 2396, Revised St. U. S., which declares that "each section or sub-division of section the contents of which have been returned by the surveyor general shall be held and considered as containing the exact quantity expressed in such return," fixes the quantity at which the government must dispose of the tract, but does not control the area in contracts between private parties.

### Boundary of Lands on a Stream.

> When an irregular tract or lot of land abuts upon a stream of water, and a meander line is run ostensibly along this shore line for the purpose of fixing the area of such tract, the real boundary of the tract is the shore line, and not the meander line.

### Representations as to Value of Land—Fraud.

> Where, upon the sale of a tract of land, the vendor states the value thereof at a sum greater than its true value, but such statement is made under circumstances that show it to be simply the opinion of the vendor, and where the vendee, though ignorant of the value of the land himself, is unrestricted in his opportunities to learn its true value, no fraud can be credited upon the vendor's statement.

### Evidence Sustains Findings.

> Upon the evidence as presented in the abstract, this court is not warranted in reducing the amount of the recovery in this case.

Appeal from District Court, Dickey County; *Lauder*, J.

Action by Thomas H. Heald against Erik Yumisko and Ina Yumisko to foreclose a mortgage. Decree for plaintiff, and defendants appeal.

Affirmed.

*George W. Parks*, for appellants.
*Stevens & Cassels*, for respondent.

BARTHOLOMEW, J. This was an action to foreclose a mortgage on real estate, given to secure the notes that represented the purchase price of such real estate. The defense was fraud and misrepresentation in the sale of the real estate, and payment. There was a decree for plaintiff, and defendants appeal.

At the outset a point is thrust upon us which involves the jurisdiction of the District Court, as. well as the jurisdiction of this court, to adjudicate upon the matter. The case was sent to a referee to take and report the testimony, and it is upon the testimony so taken that the judgment is based. Section 5455, Rev. Codes, reads, "All or any of the issues in an action whether of fact or law or both may be referred by the court or judge thereof upon the written consent of the parties." It is urged that the referee was without power to act in this case, as no written consent to the reference was given. The order of reference reads as follows (omitting the title:) "The above entitled cause coming on to be heard in open court this 29th day of May, 1896, the plaintiff, by his counsel, moved the court for leave to amend his complaint, which motion was granted upon condition that the plaintiff would consent to a reference of the cause to a referee to take the testimony offered by the respective parties, and report the same to this court, which condition was by the plaintiff consented to, and which reference was also consented to by the defendants. It is therefore now ordered," etc. There is no evidence in the record to show that this recital was not strictly true, and it shows that defendants, in open court, consented to the reference. It has been repeatedly ruled that this consent in open court entered in the order was a waiver of any other written consent, and rendered the order of reference made in pursuance thereof strictly legal and binding on the parties. *Keator* v. *Plank Road Co.*, 7 How. Prac. 41; *Leaycroft* v. *Fowler*, *Id.* 259; *Bucklin* v. *Chapin*, 35 How. Prac. 155; *Bonner* v. *McPhail*, 31 Barb. 106; *Smith* v. *Hicks*, 108 N. C. 268, 12 S. E. Rep. 1035. Moreover, the reference to which the parties consented was a reference "to take the testimony offered by the respective parties, and report the same to this court." Can the defendants now be heard to say that the reference was nugatory because the referee was not required to make findings of fact and conclusions of law? .We think not. We are not deciding what a court might do where a consent was simply to a reference of the case. Here

the particular purpose of the reference was assented to. In *Keator* v. *Plank Road Co.*, *supra*, the court said: "The agreements of parties, in the presence of the court, in respect to the proceedings in a pending suit, have always been held binding. It will, indeed, be a sad condition of things when it shall be otherwise." This disposes of all the assignments in which the reference is directly or indirectly attacked.

The respondent insists that the assignment of errors in this case so far fails to comply with the rules of this court that we cannot, under the assignment, investigate any question of fact. We would be warranted, under the rule, in declining such investigation. But we have a discretion in the matter, and in this instance we choose to disregard the defects, and to decide the points that appellants have endeavored to raise.

The main point wherein it was claimed there had been fraud and misrepresentation was as the quantity of land conveyed. The plaintiff represented to the defendants when he sold said land that the tract contained about 140 acres, and the land was purchased at so much per acre on that basis. The trial court found that the representations as to quantity were substantially true. Appellants contend, on the other hand, that the tract contends but 86 acres and a fraction. In the patent received from the government by plaintiff, the land is thus described: "Lots five and six and the southeast quarter of the southwest quarter of section twenty-six, township one hundred and twenty-nine north, of range sixty west of fifth principal meridian in North Dakota, containing eighty-six and forty-hundredths acres, according to the official plat of said land returned to the general land office by the surveyor general." Appellants claim that the amount named in the patent is conclusive. The evidence shows that lots 5 and 6 are irregular tracks, —made so by the James river. When the government survey was made, a meander line was run along such river, from which, of course, its area was estimated. If these lots are bounded by the meandor line, they contain only 46 acres and a fraction; but, if

they extend to the shore line of the river, they contain about 100 acres. It becomes important, then to establish the true boundary. The appellants rely upon section 2396, Rev. St. U. S., which declares that "each section or subdivision of section the contents of which have been returned by the surveyor general shall be held and considered as containing the exact quantity expressed in such return." But we are not to presume from that language that the federal government intended to regulate contracts between private parties, and to declare that every surveyed tract of land must, regardless of mistakes and inaccuracies, however, pronounced, be forever held and considered, in conveyances between private parties, to contain the exact quantity specified in the government survey. Rather, it was the purpose to fix by that statute the exact quantity at which the general government should dispose of the tract. See cases hereafter cited. Appellants also cite *Lammers* v. *Nissen*, 4 Neb. 245, approved in 25 Lawy. Co-op. Ed. U. S. 562, and *Bissel* v. *Fletcher*, 19 Neb. 725, 28 N. W. Rep. 303. In each of those cases the plaintiff owned a tract of land which by government survey was bounded on the side nearest the water (in one case the Missouri river, and in the other the Republican river) by a meander line; and plaintiff in each instance sought to hold the land to the shore line, but in each case the government had surveyed and sold other tracts lying between such meander line and a shore line. Each case announces the principle that "in the surveys of the public lands of the United States the meander lines are generally considered as following the windings of streams; but the question whether they do so or not is a question of fact, to be determined by evidence *aliunde*." And in each case it was held that, where the meander line did not in fact follow the shore line, the fact that it was designated on the map as a meander line was not conclusive on the government, and did not estop it from claiming the land between such pretended meander line and the shore line. We think those cases were correctly decided, under their facts. They concede the rule to be well settled that a meandered line border-

ing on the bank of a stream is not to be considered as the boundary of the tract, but simply as defining the sinuosities of the bank of the stream, and as a means of ascertaining the quantity of land in the fraction subject to sale. In the case before us there is nothing in the record to show that the government claims, or has ever claimed, any land between the meander line and the shore line. On the contrary, it appears that, on their purchase, defendants went into possession up to the shore line, and have ever since and are now holding such possession. The trial court found expressly "that said lots 5 and 6 lie adjacent to, and abut upon, the James river, and said line is the eternal western boundary of said lots; that the meander line showing the place of said water course, and its sinuosities, courses, and distances, was run along said river in the government survey thereof." As appellants attack this finding, we are bound to presume that they have given us in the abstract the evidence, if any there be, upon which they base their contention, and yet we search the abstract in vain for any evidence whatever upon which such finding can be disturbed. True it is that the finding shows the tract to be much larger if bounded by the shore line than if bounded by the meander line. But what causes this difference, we are left to conjecture. Whether it arise from accretion proper, or from the failure of the surveyor to accurately follow all the horseshoe bends and windings of an exceedingly tortuous stream, we cannot say. In *Hardin* v. *Jordan*, 140 U. S. 371, 11 Sup. Ct. 808, 838, it is said: "The meander line runs along or near the margins of such waters are run for the purpose of ascertaining the exact quantity of the upland to be charged for, and not for the purpose of limiting the title of the grantee to such meander lines. It has frequently been held, both by the Federal and State courts, that such meander lines are intended for the purpose of bounding and abutting the lands granted upon the waters whose margins are thus meandered, and that the waters themselves constitute the real boundary." Again, in *Railroad Co.* v. *Schurmeir*, 7 Wall. 272, the court say: "Meander lines are run, in surveying fractional portions of the

public land bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of a stream, and as means of ascertaining the quantity of land in the fraction subject to sale, and which is to be paid for by the purchaser. In preparing the official plat from its field notes, the meander line is represented as the border line of the stream, and shows to a demonstration that the water course, and not the meander line as actually run on the land is the boundary." And to same effect are *Kraut* v. *Crawford*, 18 Iowa, 549; *Broom Co.* v. *Adams*, 44 Mich. 403, 6 N. W. Rep. 857; *Clute* v. *Fisher*, 65 Mich. 48, 31 N. W. Rep. 614; *Boorman* v. *Sunnuchs*, 42 Wis. 233; *Ridgway* v. *Ludlow*, 58 Ind. 248; *Houck* v. *Yates*, 82 Ill. 179; *Fuller* v. *Dauphin*, 124 Ill. 542, 16 N. E. Rep. 917; *Ex parte Davidson*, 57 Fed. Rep. 883. In this last case this language is used: "Whatever ledges or spits or tongues or points of land project out beyond the meander line are included as a part of the fractions conveyed by the patent." Under these decisions, as the evidence stands in this case, it is too clear for question that defendants took to the shore line, under their deed.

There is also complaint by appellants as to misrepresentations in the value of the land. There is no doubt but that, pending the negotiations for the sale, plaintiff stated that the land was of a higher value than that placed upon it by witnesses. But, while the defendant says that he knew but little or nothing about the value of land, he had with him a friend,—a countryman of his,—who was present expressly to aid defendant in making a purchase, and he could have gotten the opinion of that friend as to the value. He could have gotten the opinion of any of the neighbors. He was bound to know that plaintiff, at most, was only expressing an opinion as to the value of property that he was trying to sell. This was so clear a case of "dealer's talk," or "puffing," that no authorities need to be cited to show that no legal fraud can be predicated thereon.

The remaining ground of complaint by appellants is the alleged failure of the trial court to give credit for all payments

made. The evidence in the abstract is not in narrative form, as required by law and the rules of court. It is in the form of questions and answers, but so entirely disconnected and fragmentary that we are not always certain that we understand it. We have given it the best examination its condition will admit. We know, in a general way, that for a year or two there were various dealings between the parties. In these dealings there were balances due from defendant to plaintiff, which were paid out of the moneys paid by defendant to plaintiff. But we cannot tell what these balances were, and there is so much controversy over time of payments that it is not possible to tell how much interest was paid. Plaintiff states with some definiteness the amounts received by him. Defendant does not admit the correctness of plaintiff's figures, but we are not able to tell from his testimony how much he claims he paid. The greater portion of his payments was made by delivering wheat to the elevators, and permitting plaintiff to receive the proceeds. But he does not give the price received, or the number of bushels delivered; and for the totals he depends upon the statements of the elevator agents, which, of course, are incompetent. We reach the conclusion that we cannot change the amount of this recovery. Indeed we would have been satisfied with it, had it been some dollars larger.

There are some purely technical points raised in appellants' brief that we have not noticed. Some of them are disposed of in the general discussion, but none of them merit further attention. ·

The decree of the District Court is affirmed. All concur.