NOLAN v. GARRISON.

1. DEPOSITIONS—DE BENE ESSE—CONDITION OF CAUSE—STATUTES
—CONSTRUCTION—CHANCERY CAUSES.

Section 10136, 3 Comp. Laws, providing for the taking of depo-
sitions de bene esse in any civil cause or matter, begun or
pending in any court of record, at law or in chancery,
when the witness is or is about to go or resides out of the
State, was not repealed as to chancery causes by section
10188 providing for the taking of testimony in chancery
causes in open court and for the issuance of a commission on
proper application; and a deposition taken under said section
10136 is admissible against the objection that it was taken
before replication was filed.

2. STATUTES—REPEAL—IMPLICATION.

Repeals by implication are not favored.

3. SAME—CONSTRUCTION—CONSTRUING TOGETHER.

Two statutes relating to the same subject-matter will be given
a construction which will give them both effect if possible,
and the court will declare that one repeals the other only
when their terms are so inconsistent that no other reasonable
construction can be given.

4. TRUSTS—PAROL TRUSTS—STATUTE OF FRAUDS—SUFFICIENCY OF
WRITINGS.

On a bill to obtain a reconveyance of certain lands deeded to
defendant by complainant in trust, evidence examined, and
held, that certain letters and contracts signed by defendant
sufficiently recognized complainant's title and described the
property sufficiently to satisfy the statute of frauds.

5. SAME.

The statute does not require a form of words or designate the
nature of the instrument which contains them, it being suffi-
cient if the writing contains the substantial terms of the
trust or sufficient to identify the subject-matter by writing.

6. EQUITY — RULES — PLEADING — FAILURE TO ANSWER ALLEGA-
TIONS OF BILL.

Failure to answer a material allegation in a bill charging the
execution of a deed requires that the allegation be taken as
admitted as to all defendants competent to answer (Chancery
Rule No. 10d).

7. DEEDS—EXECUTION—EVIDENCE—SUFFICIENCY.
   On the issue whether a quitclaim deed was executed by defendants as alleged, evidence examined, and *held*, sufficiently proved.

8. EVIDENCE—ADMISSIBILITY—BOOKS OF ACCOUNT.
   On a bill for an accounting, defendant's book of accounts showing his receipts and disbursements relative to the property in question is properly admitted in evidence as an admission of indebtedness, though every item therein is not shown to relate to such matter, and the account begins with a balance brought forward from another book not produced.

Appeal from Wayne; Mandell, J. Submitted October 10, 1907. (Docket No. 27.) Decided February 15, 1908.

Bill by Frances A. Nolan against John W. Garrison, Mary Garrison, and Charles Thurman, guardian of said John W. Garrison, for the reconveyance of certain real estate, and for an accounting. From a decree for complainant, defendants appeal. Affirmed.

*Walker & Spalding*, for complainant.

*Edward McNamara* (*H. Geer*, of counsel), for defendants.

MCALVAY, J. The complainant filed her bill of complaint in this case against her son, John W. Garrison, his wife, Mary Garrison, and Charles Thurman, guardian of John W. Garrison, to obtain a reconveyance of certain real estate from defendant John W. Garrison; an accounting for the proceeds of mortgages placed by him on that real estate; for rents and profits received by him from that and other real estate of complainant; for moneys he obtained by pledging certain bank stock belonging to complainant; and for general relief.

The real estate in controversy is all situated in the city of Detroit. A decree was granted complainant ordering a reconveyance as prayed, and there was found to be due her from defendant John W. Garrison upon said several accounts the sum of $23,611.11, which was decreed to be

paid. From this decree defendants have appealed, and ask a reversal for several reasons. These reasons will be considered in the order of presentation by appellants, and during such consideration such facts as may be necessary, relative to the dispute between the parties and the property involved, will be stated.

1. Appellants contend that the first deposition of complainant should not have been admitted in evidence. (*a*) Because the cause was not at issue when it was taken. (*b*) That after it was at issue defendants demanded an examination of all witnesses in open court and therefore depositions could only be taken under a commission. These objections involve a construction of sections 10136 and 10188, 3 Comp. Laws.

The facts relative to taking the depositions in the case are as follows: Complainant and her husband, George M. Nolan, reside in Jacksonville, Florida. She was temporarily in Detroit at the time the bill of complaint in this cause was filed, October 12, 1905. The answer of defendants was filed October 30, 1905. On this date complainant gave notice under section 10136, 3 Comp. Laws, of taking her testimony by deposition on November 2d following. The deposition was taken according to notice, and the objections to taking it made at that time, and later when the cause was heard, were the same as those now urged before this court. Issue was joined on filing replication, and both parties gave notice of intention to claim the right to an examination of witnesses in open court.

The deposition objected to was taken under section 10136, the material part of which provides as follows:

"The testimony of any witness may be taken by deposition de bene esse, in any civil cause or matter, begun or pending in any court of record, at law or in chancery, * * * or in any other civil proceeding, when the witness is or is about to go or resides out of the State of Michigan."

Section 10188, upon which defendants rely, reads as follows:

" Either party to a cause in chancery shall have the right to an examination of all the witnesses in the case in open court as in a suit at law if within ten days after the cause is at issue he gives notice in writing to the opposite party of his intention to claim such right, in which case no examination of witnesses shall be had before a circuit court commissioner; but the cause shall be heard in its course on the calendar by examination of witnesses in open court, unless the court on cause shown otherwise direct, as in a suit at law: *Provided,* That such notice of hearing in open court shall not deprive the court, on application by either party, of the right to make an order directing a commission to take the depositions of witnesses outside of the jurisdiction of the court, or in case where a party may be deprived of material testimony or rights, if such a commission is not issued."

These acts were approved on the same day. The one first quoted was ordered to take immediate effect. The other became operative 98 days later. Appellants argue that the first deals generally with the taking of testimony by deposition in all civil proceedings whether at law or in chancery; that the other act deals specially with the taking of depositions in suits in chancery; that there is a conflict between these two statutes and that in taking depositions in suits in chancery the second act controls under authorities cited. This contention assumes that a conflict in fact exists. This cannot be maintained either upon a comparison and fair construction of the two sections, or a study of their legislative history, unless we assume a legislative intent from such comparison and construction which the words do not necessarily imply. To hold that section 10188 repeals the provisions of section 10136 relative to taking depositions on notice in chancery causes we must find that in passing these two acts at the same time the legislature intended that section 10136, about which there appeared the greater urgency, being given immediate effect, was to continue to be the law for 98 days and then be repealed by implication. Repeal by implication is

not favored. The rule of construction which this court upon reason and authority should apply is that one which will give both statutes effect if possible and will declare that one repeals the other only when their terms are so inconsistent that no other reasonable construction can be given.

Section 10136 makes provision specifically for taking testimony de bene esse under certain conditions "in any civil cause begun or pending in any court of record, at law or in chancery; section 10188 provides for a right to examine all witnesses in a chancery cause in open court, as in a suit at law, in which case no examination of witnesses shall be had before a circuit court commissioner,—

"*Provided*, That such notice of hearing in open court shall not deprive the court, on application by either party, of the right to make an order directing a commission to take the depositions of witnesses outside of the jurisdiction of the court, or in case where a party may be deprived of material testimony or rights, if such a commission is not issued."

This provision does not exclude the one made by the other act. They are not inconsistent with each other, but both may be given effect, thereby giving the party both methods for procuring the testimony of a witness. This is the reasonable construction to give this legislation in view of the circumstances of its enactment above related and in view of the fact that the construction urged would deprive a party in many instances of testimony by reason of sickness, old age, residence or expected departure of material witnesses, should he be obliged to wait until ten days after issue joined before any step could be taken to secure such testimony. The deposition was properly admitted.

2. Defendants contend that the title to the property at the corner of Woodward and Baltimore avenues vested absolutely in defendant John W. Garrison on the execution and delivery of the deed to him by complainant in 1886, and the alleged verbal understanding between the

parties that the deeds should not be recorded and should be redelivered on demand and that she should remain the owner, was void under the statute of frauds.

To understand properly the questions raised by this contention, it is necessary to state the facts, and the transactions between complainant and her son, John W. Garrison, relative to this property. Her husband, John J. Garrison, died in 1876. Under his will complainant took a life estate in property at the corner of Cass and Jefferson avenues, it renting at about $200 per month, with remainder in fee to others, including this son. She also received from this estate $10,000 money loaned by her to her husband at the time of their marriage and she had an estate in her own right. John W. took under his father's will a life estate in real estate on Woodward avenue, with remainder over to his children. His life estate in this property and his remainder interest in the Jefferson avenue property he deeded to his mother in 1877 and 1880. In 1884 complainant married Maxwell M. Fisher. She was divorced from him in 1888. In 1885 she purchased the lots situated at the northeast corner of Woodward and Baltimore avenues, being the property the title to which is in controversy in this suit. In December, 1886, expecting trouble with Fisher, she deeded this property to John W. Garrison, as she claims, at his suggestion and under the verbal agreement referred to, that the deed was to be redelivered to her whenever she called for it and was not to be recorded until her death. He did not record the deeds of this property until August, 1895. In 1887 she built a block of five stores and a warehouse upon these lots at a cost to her of more than $20,000.

The proposition that in this case title to this property passed to John W. Garrison upon the delivery of the deeds and that the understanding is void under the statute of frauds is, we think, correct and well supported by our decisions provided the evidence of the agreement between the parties is entirely oral. Complainant, however, claims that the agreement between mother and son re-

garding her continued ownership is evidenced by writings, and that it is therefore not within the statute of frauds.

Complainant left Detroit in 1889. She went to Europe that year and returned in 1890. She took up her residence in New Haven, Conn., where she lived until 1893, when she married her present husband, Mr. George M. Nolan, and since that time she has resided with him in Jacksonville, Florida. Since 1889 she has returned to Detroit but once for a brief time, besides the visit just before this suit was commenced. From 1889 until August, 1905, when he was declared incompetent, defendant John W. Garrison acted as agent for his mother in renting the property on Cass and Jefferson avenues, and this property at the corner of Woodward and Baltimore avenues, collecting the rents, paying taxes and insurance and attending to repairs. During this time and on February 16, 1887, he drew up for her signature and witnessed a contract for carpenter work, roofing and hardware to be performed and furnished in building the stores on these lots in question, describing her as owner, and which she signed as owner. On September 28, 1887, he wrote out another contract for like work upon the warehouse built upon this property, describing it, designating her as owner and he signed her name as such owner by him as her agent. The originals of these contracts are before us. Two other contracts of like import and character were produced in evidence. Tax lists for 1896 and 1901 are in evidence in his handwriting, signed by him describing this property and asking that the receipts be made in the name of Frances A. Nolan. On July 10, 1901, he wrote to his mother a letter covering nine pages of the record, relating his experiences in selling the property in which he had a life interest, being the same property he had deeded to his mother, as he says, to protect himself, and which she afterwards reconveyed to him. This sale netted to him and the children the sum of $133,000, as appears from the record. In this letter he wrote:

"Your property out Woodward avenue is you own and I watch it and am as careful with it as I can be, keeping the taxes and insurance all paid up on it, and well rented, trusting that it, with the Jefferson avenue store, may provide you a suitable income during your life, and by steady increase in valuation be.as big a boon to my declining years, or to my children, as father's has been to me, only without the legal complication and expense attending the correcting of the title."

Complainant had no other property on Woodward avenue than that in dispute. The two properties referred to above are those the son cared for and rented for his mother.

In the same letter he said further:

"Your property is all right and you need have no fears. Mother, dear, my entire actions and doings are open for inspection and rigid inspection by any one and at any time that has authority to so investigate.   *   *   *   I have your tax list ready and in and am prepared to pay them as soon as I receive notice from the office of the amount due."

The tax list for 1901 he refers to has been mentioned above.

In a letter written on April 16, 1905, to complainant, this defendant said:

"Was greatly surprised at the tone of your last letter. If you sell your Detroit property you should have learned by this time that the Judge [her husband] will be buying more tobacco plantations   *   *   *   or spend the money in other ways and you will eventually have nothing, and if you prefer to have a lawyer look after your property instead of me you will find that he will make heavy charges for doing same, and it will be the ruination of me and my business as every one who doesn't know the real facts thinks I own the property myself."

The complainant's claim in this case, briefly stated, is, that although these lots were deeded to the son he held them for her and he was never the real owner. We are satisfied that these writings are sufficient to satisfy the

statute of frauds and sustain complainant's contention
that the grantor continued to be the real owner of this
property notwithstanding the deeds.    They show that he
held such title as trustee for her.    It is not necessary or
proper to go outside of these writings to establish this
fact.    In these letters of July 10, 1901, and April 16,
1905, is a sufficient description of the  property and a
recognition of the ownership in his mother, thus disclos-
ing that there is a trust and what that trust is.    He could
have made it no more certain had he said:

" You deeded me this property on Woodward avenue,
but it was not to be mine.  It is your own.  I have
looked after it with great care for the purpose of assuring
you an income during your life.  It will ruin me and my
business should you put this in another's hands, as every
one who dosen't know the real facts thinks I own the
property myself."

The statute does not require a  form of words or desig-
nate the nature of the instrument which contains them.
It is sufficient if the writing contains the substantial terms
of the trust or at least sufficient to identify the subject-
matter by writing.    *Renz* v. *Stoll*, 94 Mich. 377; 1
Perry on Trusts (4th Ed.), §§ 82, 83;  Browne on Statute
of Frauds (5th Ed.), § 108.

3. Defendants claim there was not sufficient evidence
to establish the alleged quitclaim deed.    This deed was a
quitclaim of this property from defendant John W. Gar-
rison and wife to complainant alleged by her to have been
made and sent to her from Detroit in 1901, and which had
upon it an indorsement of its record, and which deed she
a short time later returned to her son at his request.

The bill of complaint set up all the facts relative to this
quitclaim deed, and what complainant claimed for it.
This was a material allegation of the bill, but was not an-
swered by defendants.    Defendant John W. Garrison,
an incompetent person, answered by his guardian, and
may therefore not be concluded.    His wife, a party to the
quitclaim deed, however, can make no claim that this

allegation cannot be taken as admitted by her. Chancery Rule 10, subd. *d*; *J. E. Greilick Co.* v. *Rogers*, 144 Mich., at p. 316.

Complainant's testimony concerning this deed was taken without objection. It shows clearly why this deed was asked for and afterwards returned to John W. Garrison. The attention of counsel was not called at the time to the claim that the testimony was a conclusion of the witness. It appears from the several letters in evidence that up to the month in which a guardian was appointed for John W. Garrison, the most friendly relations existed between mother and son. He had kept her will for her until she sent for it, and then he twice requested that the new will be sent to him for safe keeping. The record shows that he asked the same thing in regard to this quitclaim deed. Complainant and her husband both testify that defendant Mary Garrison admitted that she executed this deed. She was not produced as a witness in the case. That she does not testify relative to this deed, the principal or only material fact in the case within her knowledge, is significant. The evidence was sufficient to establish the quitclaim deed, and the fact of its execution and delivery is strong proof of the truth of complainant's contention relative to the transfer to him and an admission that he held as her trustee.

4. Defendants' last contention is that the account book of John W. Garrison was improperly admitted in evidence, because it started with a balance brought forward and was only the continuation of an account; and because it was not shown that every item related to the property in controversy.

This account book was produced by defendant's guardian, and was found by him in defendant's desk. It starts with a debit and credit balance brought forward. The debit items are about 400 in number and all but one are items for rent received from this property in dispute and the Jefferson avenue property of complainant which this defendant had in charge, each item describing the

street and number, which are admitted to be correct. They aggregate about $18,500, and cover these rents by the month from June 1, 1902, to September 1, 1905. The item not a rent charge is $1,250 received from an insurance company. The credit to himself of expense items for repairs on fire loss at about this time shows that a fire had damaged this property. The entries in the book are nearly all in the handwriting of this defendant. The credit items of this account are all of them for money and drafts paid to complainant, insurance, taxes, and items of repairs and water taxes. It does not appear against what property all of these items should be charged, but scattered about on every page of this side of the account when items are designated as having been expended on any particular property such property is the property from which the rents were received. The account on its face purports to be an account of receipts from and disbursements on account of these properties which belonged to his mother. The book was offered as evidence of admissions of indebtedness and was properly admitted as such. If the balance brought forward and the items which do not appear as charged on account of this property were stricken out the balance against this defendant would be increased several thousand dollars.

As to the accounting made by the court below, there was no evidence offered by defendants, and the proofs are abundant in its support. We are satisfied that defendant John W. Garrison betrayed his mother's confidence and deceived her in many ways. He recorded the deeds to this property and mortgaged it without her knowledge or consent and after he had told her they were destroyed. He also borrowed money on her bank stock and purposely kept these facts from her knowledge. She first knew that these deeds were recorded and her property mortgaged and pledged shortly before this suit was brought. The cordial relations between mother and son continued until the month in which his guardian was appointed. There is no force in the claim that com-

plainant has rested until her son is under guardianship as an incompetent person, and has begun suit when he is at such disadvantage. She began her suit promptly on the discovery of the state of facts here divulged, and by abundant proof has satisfied us that she is entitled to the relief she asks, and which the court below granted.

The decree of the circuit court is affirmed, with costs.

GRANT, C. J., and BLAIR, MONTGOMERY, and CARPENTER, JJ., concurred.