L. R. BAIRD (Substituted for C. W. Reimers) Receiver of the Security State Bank of Brantford, a Corporation, Plaintiff and Respondent, v. NATIONAL SURETY COMPANY OF NEW YORK, a Corporation, and Nels E. Ostrem, Defendants and Appellants.

L. R. BAIRD (Substituted for C. W. Reimers) Receiver of the Security State Bank of Brantford, a Corporation, Plaintiff and Respondent, v. NATIONAL SURETY COMPANY OF NEW YORK, a Corporation, and Dewey Bernard Miller, Defendants and Appellants.

(209 N. W. 204.)

**Appeal and error — findings of referee approved by trial court not appealable.**

1. In an action at law, to recover on a surety bond, referred by stipulation to a referee to take the testimony, make findings of fact and conclusions of law, and which findings and conclusions were approved by the trial court, it is *held* that on appeal such action is not triable de novo.

**Evidence — books and records of bank are admissible as evidence.**

2. Books and records which, on their face, purport to be the books and records of a bank, and which, upon the closing of the bank, were found in the possession of the president and cashier of the bank by a deputy state examiner, who also identified the same as books and records examined by him as a deputy state examiner at different times while the bank was open and transacting business, are, for reasons stated in the opinion, held to be admissible in an action by the receiver of the bank against the president and cashier, upon their bonds as officers of the bank.

**Evidence — books kept by principal obligor are admissible as evidence.**

3. Books and records kept by a principal obligor are admissible in evidence as against the surety.

**Evidence — court may permit competent witness to testify as to result of his examination of books and records.**

4. The court may, in its discretion, permit a competent witness, who has

---

Note.—(1) Findings of referee not disturbed on appeal if supported by evidence, see 2 R. C. L 210; 1 R. C. L. Supp. 448; 4 R. C. L. Supp. 93; 5 R. C. L. Supp. 82; 6 R. C. L. Supp. 77.

(3) On admissibility in evidence of books of principal obligor against surety, see 21 R. C. L. 1093.

examined ·the books with reference to the points sought to be established, to testify·to the result of his examination or to present schedules verified by his testimony showing the details of the computation he has made where the facts sought to be proved. are of such character and the books are so voluminous that the examination of each item would be very laborious.

**Banks and banking — evidence showing that president and cashier worked together in unlawful conduct of bank is competent without their being charged with conniving together.**

5. In separate actions against the president and cashier of a bank, in which actions the defendants are separately charged with embezzlement of the funds of the bank, the evidence which shows that they acted together in their unlawful conduct of the bank is competent even though there is no allegation in the complaint charging them with conniving together.

Opinion filed May 1, 1926.

Appeal and Error, 4 C. J. § 2646 p. 726 n. 16; § 2662 p. 732 n. 86; § 2853 p. 880 n. 97. Banks and Banking, 7 C. J. § 184 p. 572 n. 52 New. Evidence, 22 C. J. § 182 p. 218 n. 88; § 221 p. 237 n. 68; § 483 p. 405 n. 43, 47; § 1037 p. 866 n. 70; § 1094 p. 896 n. 84; § 1095 p. 899 n. 97; § 1096 p. 900 n. 1; § 1303 p. 1017 n. 88, 89. Pleading, 31 Cyc. p. 762 n. 5 New. Principal and Surety, 32 Cyc. p. 137 n. 36.

Appeal from judgments of the District Court of Foster County, *Coffey,* J.

Affirmed.

*Lawrence, Murphy & Nilles,* for appellants.

"Proofs, to be effectual, must correspond substantially with the allegations; hence, if there is a variance between the nature and elements of plaintiff's cause of action as alleged, and as proved, it is fatal." 31 Cyc. pages 700 and 701.

"Variance means material difference; and it arises when there is a substantial departure from the issues in the evidence adduced, and must be in some matter which in point of law is essential to the charge or claim." 21 R. C. L. pp. 608, 609.

"Plaintiff cannot allege one set of facts and recover upon proof of another set of facts." (Cal. App. 1909) Secbach v. Kuhn, 9 Cal. App. 485, 99 Pac. 723; (Colo. 1915) Denver Horse Importing Co. v. Schafer, 58 Colo. 376, 147 Pac. 367; (Ill. 1908) Lovington Tp. v. Adkins, 232 Ill. 510, 83 N. E. 1043; (App. 1910) Zacuchny v. Chicago Lighterage Co. 157 Ill. App. 136; (Iowa 1913) Helm v. Ressel, 162 Iowa, 75, 143 N. W. 823.

A plaintiff must recover, if at all, on the cause of action pleaded in the petition. (Ind. 1910) Terre Haute Electric Co. v. Roberts, 91 N. E. 941, 174 Ind. 351; reversing judgment (Ind. App.) 90 N. E. 335.

A plaintiff can recover only on the cause of action alleged and proved. (Ill. App. 1906) Latrobe Steel & Coupler Co. v. Shlones, 129 Ill. App. 215; (Mo. 1907) Henry County v. Citizens Bank of Windsor, 208 Mo. 209, 14 L.R.A.(N.S.) 1052, 106 S. W. 622; Henry County v. Farmers Bank, 208 Mo. 238, 106 S. W. 630.

C. B. Craven (E. P. Kelly of counsel), for respondent.

The books and records of the bank are presumed to be correct. Reimers v. Larson (N. D.) 202 N. W. 653.

It will be presumed that corporate accounts and proceedings are regular; that corporate business is lawfully conducted. 22 C. J. 107, cases cited notes 70–72.

The books and records of a corporation are competent evidence to prove its existence, and preliminary proceedings showing its organization under its charter or general law, and the corporate accounts and proceedings generally. 22 C. J. 896, § 1095, cases cited, notes 85, 86; 2 Enc. Ev. 677.

Books of account kept by an agent, or under his direction, and in pursuance of his duty as such agent, and pertaining to the business of his principal, are competent evidence against a surety. 2 Enc. Ev. 676, cases cited note 90; 32 Cyc. 137 cases cited notes 36, 37; Brillion Lumber Co. v. Barnard (Wis.) 111 N. W. 483; Williamsburg City F. Ins. Co. v. Frothingham, 122 Mass. 391; Agricultural Ins. Co. v. Keeler, 44 Conn. 161; Bricker v. Stone, 44 Mo. App. 530.

Admissions by the principal, connected with the act or transaction to which the contract of surety relates and within the scope of the duties connected with the joint liability, are admissible. 32 Cyc. 137, note 35; Greatwest Life Assur. Co. v. Shumway (N. D.) 141 N. W. 479; Farmers Co-op. Exch. v. United States Fidelity & G. Co. (Minn.) 184 N. W. 792.

"It is true that generally in actions in the nature of trover for the conversion of bills, notes, bonds or other security, the measure of damages is prima facie the amount due on the security with interest from the time of conversion, but this is not a case when such a rule is ap-

plicable; the rule itself is based upon the fact of the prevailing party being divested of his property which was valuable to him as property." Winona v. Construction Co. 29 Minn. 68.

"The measure of damages for the conversion of promissory notes, bonds, and other evidence of indebtedness is their actual not their face value. But in the absence of the proof of actual value they will be deemed to be worth their face value or such sum as plaintiff might have recovered upon them." 38 Cyc. 2097 note 71.

"Having the evidence before the jury without objection, the court, if necessary, should have directed the amendment of the pleading so as to conform with the defense made." Bowers v. Thomas (Wis.) 22 N. W. 710.

BURKE, J. This is an action on a surety bond executed and delivered to the Security State Bank of Brantford, North Dakota, by the National Surety Company of New York, a corporation, and Dewey Bernard Miller, and by the National Surety Company of New York, a corporation, and Nels E. Ostrem. There are two actions: One by L. R. Baird as receiver of the Security State Bank of Brantford v. The Nat'l Surety Co. of New York and Dewey Bernard Miller; and one by L. R. Baird, receiver of Security State Bank of Brantford v. The Nat'l Surety Co. of New York and Nels E. Ostrem. The two actions were tried, briefed and argued as one. The court appointed C. W. Burnham as referee to take the testimony and to make findings of fact. The testimony was taken down and transcribed, and upon the same the referee made his findings of fact in which he found that the Security State Bank of Brantford was a banking corporation existing under the law of the state of North Dakota, with its principal place of business in the town of Brantford, North Dakota; that it was found by the banking board of the state or North Dakota on or about the 21st day of July, 1921, to be insolvent and was on the same day closed for business and taken in charge by the bank examiner; that the defendant Dewey Bernard Miller was served with summons in said action more than thirty days previous to the commencement of the trial and was, at the time of the trial of said action, in default; that said defendant Dewey Bernard Miller was, between April 1st, 1920, and the 18th day of July, 1921, both inclusive, acting cashier of the said Security State Bank

of Brantford; and during all of said time Nels E. Ostrem was the acting president of said Security State Bank; that during all of said time between said dates the said Dewey Bernard Miller, as cashier, and Nels E. Ostrem, as president, were in active charge and full control of the business affairs of the bank and in possession of and in full charge and control of the books and the records of the said corporation; that on the 1st day of May, 1919, the defendant National Surety Company entered into a written contract with said bank and agreed to and with said bank to indemnify the said bank against loss, not exceeding $2,000, of any money, or other personal property including money, or other personal property for which the said Security State Bank of Brantford should be responsible through fraud, dishonesty, forgery, theft, embezzlement or wrongful extractions of the said Dewey B. Miller, directly or in connivance with others, while the said Dewey B. Miller should be engaged in the service of said Security State Bank of Brantford, and while the said contract and agreement should be in force.   That on or about the 1st day of March, 1920, by a written agreement, the liability of said National Surety Company was increased to the sum of $10,000 and about the 17th day of March, 1920, by a written agreement duly attached to said contract, all indemnity, as so increased to the sum of $10,000, was extended to expire on the 1st day of May, 1921, as subject to all the covenants and conditions of the original contract; that on or about the 11th day of March, 1920, a written agreement duly attached to said contract of indemnity so increased to the sum of $10,000 was extended to expire on the 1st day of May, 1922.   Between the 21st day of January, 1920, and the 18th day of July, 1921, both inclusive, the defendant Dewey B. Miller, with the knowledge of, and in connivance and conspiracy with one Nels E. Ostrem, did, without the knowledge or consent of the directors of the said bank steal, embezzle, and wrongfully abstract from the possession of the said Security State Bank of Brantford and convert to his own use and benefit certain moneys, negotiable papers, books and records, and personal property in the sum of $16,203.67, the same being the property of and for which the Security State Bank of Brantford was then and there responsible to the loss and damage of the said bank in the sum of $16,203.67; that the directors of the said bank discovered the theft on the 5th day of August, 1921, and within five days gave written notice to the defendant, the National

Surety Company, and within three months, to wit, on the 20th day of October, 1921, the directors furnished to said National Surety Company affirmative proof of loss under oath, together with full particulars of the loss so far as they were able so to do, and caused the same to be filed with said defendant company at its home office as provided by Condition Four of the said contract of indemnity, and have from time to time since said 20th day of October, 1921, furnished to said defendant company, and caused to be filed with said defendant company, other and further information and evidence as they have been able to secure concerning said loss and damage; that the plaintiff herein and the said Security State Bank of Brantford, by and through its board of directors, have in all things complied with the terms of said contract; that said bank is the present owner and holder of said accounts and claims alleged and set forth in the complaint; that demand has been made upon the defendants and each of them for the payment but that payment had been refused and neglected; that there is due and owing from the defendant National Surety Company and from said Dewey Bernard Miller, because of said theft and embezzlement, and from each of the said defendants to the plaintiff the sum of $8,101.84 with interest thereon at the rate of 6 per cent per annum from and since the 18th day of July, 1921; that all the allegations of the complaint are true.

On the 15th day of September, 1924, the plaintiff moved to confirm the report of the referee, and for judgment, which motion was duly granted and judgment was entered against the defendants and in favor of the plaintiff for the sum of $9,669.54, on the 9th day of October, 1924. The same facts were found by the referee in the case against the National Surety Company and Nels E. Ostrem and judgment was duly entered in said action for the same amount. The Dewey Bernard Miller case was tried first and it was stipulated by counsel that inasmuch as the evidence in the Nels E. Ostrem case would be exactly the same that it would be a waste of time and expense to cover it again and it was agreed that the court might decide both cases using as the evidence transcript in the Dewey Miller case together with all exhibits, subject, of course, to all objections made, etc. From the judgment in each case the defendant National Surety Company appeals to this court and demands a trial de novo upon the theory that this is an action for accounting and, as such action of accounting, the same was referred to

a referee to hear the testimony and make his findings of fact. The action was referred by stipulation of the parties and the stipulation provided that the employment of a referee should be construed to come within the provisions of subdivision 4 of § 7646, Comp. Laws, 1913, which is a compulsory statute and which provides that when the parties do not consent to the reference the court may, upon the application of either party, or of its motion, direct a reference in the following cases:

"In any other civil action or proceeding where a jury has been waived, or where the action or proceeding is triable to the court or judge, when a note of issue has been filed and notice of trial served, or where one of the parties is in default in appearance or answer, on motion duly noticed made by either party, or in open court without notice when the action or proceeding is on the peremptory call calendar, when in the discretion of the court it is deemed necessary to expedite the administration of justice."

The Wisconsin court, in the case of Brillion Lumber Co. v. Barnard, 131 Wis. 284, 111 N. W. 483, construes a similar statute and says:

"We do not understand that in order to justify a reference the action must be strictly based on the account or for an accounting. The language of the statute clearly indicates the contrary. If 'the trial of an issue of fact shall require the examination of a long account on either side,' then according to the express language of the statute, the reference may be directed either as to the whole issue or any specific question of fact involved. . . . True, mere items of damage do not constitute an account, and likewise true there must be an account in the proper sense and it must be something more than a mere incidental matter. It must be a matter forming substantially the basis of the plaintiff's claim, though the action need not be on the account nor for an accounting. References have been sustained in actions of this nature because of the necessity to examine the principal obligee's account to ascertain the amount of his defalcation and determine the extent of the liability of the surety upon the bond. Such cases are referable because the account is a matter directly involved in the main issue. Dane County. v. Dunning, 20 Wis. 210; Cairns v. O'Bleness, 40 Wis. 469; Andrus v. Home Ins. Co. 73 Wis. 642, 3 L.R.A. 271, 41 N. W. 956."

It is stipulated that the reference be made under subdivision 4 of §

7646 and since the parties agreed in open court it might also be made under § 7645. Heald v. Yumisko, 7 N. D. 422, 75 N. W. 806. The action is not for an accounting but is an action to recover on a bond in other words an action to recover on contract, and a trial de novo cannot be had.

Before the taking of any testimony the defendant objected to the introduction of any testimony for the reason "that the bill of particulars which has been furnished is incomplete, incompetent, and is not in fact any true bill of particulars; that the same is indefinite, uncertain and unintelligible and furnishes no basis upon which the defendant may anticipate or determine the plaintiff's claims." The overruling of this objection is assigned as error.

Section 7457 of the Compiled Laws of 1913 requires a party to an action to deliver to the adverse party, within ten days after demand, a bill of particulars, and the court or a judge thereof may order a further account when the one delivered is defective, and the court may in all cases order a bill of particulars of the claims of either party to be furnished. There is no law under which the defendant's objection could be sustained and no error in overruling his objection.

The defendant has specified and has assigned 174 errors, practically all of which relate to the admission of testimony during the trial, the testimony of witnesses, and the exhibits, consisting of the books of the bank, letters in the files of the bank, and the report of an auditor who made an audit of the affairs of the bank as taken from the books; and further, that the evidence is insufficient to justify the findings of the referee and the judgment of the court. It is the contention of the defendant that the books of the bank were not properly identified by officers of the bank in whose handwriting the books were kept or by any officer who had the custody of the books and under whose supervision the books were kept as provided by § 7909, Comp. Laws 1913. On the other hand the plaintiff contends that the two defendants, Dewey Bernard Miller and Nels E. Ostrem, were the active officers of the bank and in control of its management and of its books, Ostrem as president and Miller as cashier. And it was their duty to keep the books. There is no conflict in the testimony on the question as to who was in control of the bank. It is all in support of the plaintiff's contention that Ostrem as president and Miller as cashier were in the bank, in control

of its management, and had the custody of the books and of all of the papers of the bank. It appears in the testimony of F. B. McAneny that he, as deputy state bank examiner, had examined this bank several times; that he had made an examination at the time the bank was closed and that he took possession of all of the books and records in the bank and later turned over all of the books and records to deputy state examiner H. A. Thomas who kept the books, files, and property of the bank in his possession until he was relieved by deputy state bank examiner H. G. Dokken who kept in his custody all of said books, exhibits and files and later turned over to H. G. Hammerud all of the said books, exhibits and files from which the report of the auditor Hammerud was made. The defendant Dewey B. Miller was present at the time of the taking of the testimony. He was called as a witness by the plaintiff but claimed his privilege and would answer no questions. He was put on the stand for the purpose of identifying the books, files and records of the bank and he stated: "I refuse to give any testimony owing to the fact that I have two complaints against me in Eddy county and the testimony which I might give in this case may be used against me in some criminal action." When the evidence was all in the plaintiff, by his attorney Mr. Craven, stated: "I want the record to show that Dewey B. Miller has been present in court during the entire trial of this case." Mr. Nilles: (for the defendant) "I would like to make this statement. That so far as the National Surety Company is concerned that Mr. Miller was requested to testify on behalf of the National Surety Company and he declined to testify for the same reasons that when Mr. Craven called him as a witness, and that is the reason that he was not called by the National Surety Company as a witness." It appears from the record that Miller, the defendant and cashier of the bank, was present during the entire trial and heard the testimony, and plaintiff's counsel states that during the trial Miller and Mr. Rodgers, an auditor employed by the bank to examine the bank, sat with the defendant Miller and counsel for the defendant, and advised and aided them in the conduct of the trial and Mr. Rodgers was not called to testify or to dispute the evidence offered by the plaintiff which statement is not denied. It appears in the record that Mr. Reiniger, one of the directors, before the closing of the bank, went to Minneapolis and called on Judge Clawson, an attorney for the defend-

ant company. He testifies: "I told him we suspected our officers and we figured on having an audit made and I asked him whether they would do that and at their own expense. He says in either case whether there is a loss or not he has got to pay for the audit and I asked him whether they had an auditor of their own who did the work and he said they did not but he said he knew of a man whose terms were very reasonable and his work had been very satisfactory and if we wanted to make an audit he advised me to go and see him. He gave me Mr. Rodger's address and I went to see him. He said he would do the work and when I got back home and saw the rest of the board I was to let him know, and when I got home we decided to have the audit made and we notified Mr. Rodgers to come. He was there about eleven days."

The books and records on their face purport to be the books, records and files of the bank. They were found in the possession of the president and the cashier of the bank when Mr. McAneny, deputy state bank examiner, examined the bank and were by him turned over to deputy bank examiner Thomas, by him to deputy bank examiner Dokken and by him to auditor Hammerud who made the audit, and during all of the time that the witnesses were testifying about the books, records and files, the defendant Miller sat with the auditor Rodgers and the attorney for the defendant as advisers.

On July 25th, 1921, Mr. Rodgers wrote to director E. M. Trove a letter being plaintiff's exhibit 66, advising Mr. Trove and signed the same as "Consulting Auditor."

Deputy bank examiner McAneny testifies that when he examined the bank on the 24th of July, 1921, that the defendants Miller and Ostrem, president and cashier of the bank, admitted to him that they had placed copies of notes which had been paid in their note pouch for the purpose of covering up a shortage of something around $5,000. He is asked, "Now, when you refer to the officers of the bank, who do you refer to?" and he answers, "Mr. Miller and Mr. Ostrem." These books and records are the records of the stewardship of the defendants Miller and Ostrem. The identification of the books and records is sufficient as to them and they were properly received in evidence as admissions made against the defendants' interests.

In the case of Merchants' Bank v. Rawls, 7 Ga. 191, 50 Am. Dec. 394, the court said:

"These books belonged to a particular custody—to the officers of the bank, in this case—and when they are proven to come from the proper repository, they are received as evidence without further proof."

In the case of Reimers v. Larson, 52 N. D. 297, 40 A.L.R. 1177, 202 N. W. 656, this court quotes with approval from the instructions of the trial court, as follows:

"The court charged the jury that the books were presumed to be correct and the fact that the defendants were officers made the presumption against them stronger. He charged that the law presumed that every man in his private and official character did his duty until the contrary was proved, and that having set up matters in defense which were contrary to the records as kept in the corporate books the burden was upon the defendants to establish their defense by a fair preponderance of the evidence. We are of the opinion that these instructions were as favorable to the defendants as they could well be. . . . The instruction in the instant case was altogether favorable to the defendants."

In the case of Dickinson v. White, 25 N. D. 523, 49 L.R.A.(N.S.) 362, 143 N. W. 754, this court said, in reference to the records:

"As before stated, in the absence of proof to the contrary, this constituted prima facie evidence of the existence of shortages and the amount thereof; and if such shortage had been subsequently made up or adjusted, such fact could have been shown by the defendant."

The books are admissible as admissions against the interests of defendants.

"Entries in a party's books of account are admissible against him as admissions against interest. Banning v. Marleau, 121 Cal. 240, 53 Pac. 692; Plummer v. Struby-Estabrooke Mercantile Co. 23 Colo. 190, 47 Pac. 294; Agricultural Ins. Co. v. Keeler, 44 Conn. 161; Kent v. Richardson, 8 Idaho, 750, 71 Pac. 117; Second Borrowers & Invest. Bldg. Asso. v. Cochrane, 103 Ill. App. 29; Milhollen v. McDonald & M. Mfg. Co. 137 Iowa, 114, 112 N. W. 812; Beyle v. Reid, 31 Kan. 113, 1 Pac. 264; Spears v. Spears, 27 La. Ann. 537; Moise's Succession, 107 La. 717, 31 So. 990; Ward v. Leitch, 30 Md. 326; Richardson v. Anderson, 109 Md. 641, 25 L.R.A.(N.S.) 393, 130 Am. St. Rep. 543, 72 Atl. 485; Bell v. Smith, 99 Mass. 617; Nolan v. Garrison, 151 Mich. 138, 115 N. W. 58; Hanson v. Jones, 20 Mo. App. 595;

Steam Stone Cutter Co. v. Scott, 157 Mo. 520, 57 S. W. 1076; German Nat. Bank v. Leonard, 40 Neb. 676, 59 N. W. 107; Globe Sav. Bank v. National Bank, 64 Neb. 413, 89 N. W. 1030; Currier v. Boston & M. R. Co. 31 N. H. 209; Bird v. Magowan, — N. J. Eq. —, 43 Atl. 278; Lucas v. Thompson, 75 Hun, 584, 27 N. Y. Supp. 659; Goetting v. Weber, 71 App. Div. 503, 75 N. Y. Supp. 890; Stetson v. City Bank, 12 Ohio St. 577; Kane v. Schuylkill F. Ins. Co. 199 Pa. 198, 48 Atl. 989; State Bank v. Johnson, 8 S. C. L. (1 Mill Const.) 404, 12 Am. Dec. 645; Daniels v. Fowler, 123 N. C. 35, 31 S. E. 598; Knapp v. St. Louis Trust Co. 199 Mo. 640, 98 S. W. 70." Sheridan Coal Co. v. C. W. Hull Co. . . . 138 Am. St. Rep. page 474.

"In 16 Cyc. page 1218, it is said: 'Declarations against interest are not only received as evidence of the fact directly asserted, but of incidental facts fairly embraced within the scope of the declaration.'"

In the case of Hall v. Henderson, 126 Ala. 492, 61 L.R.A. 639, 85 Am. St. Rep. 53, 28 So. 534, the court says:

"The most potent probative evidence tending to establish a sale by Henderson to the corporation, and a knowledge by him that he was being paid out of its assets, is to be found in the books of the corporation,—entries upon the cash book of the company. We repeat, the most potent probative evidence tending to establish these facts is to be found in these books, for the reason that, if the facts disclosed by them stood alone, in connection with the admitted fact that Henderson was a director and treasurer of the corporation at the time the entries were made, the facts as disclosed by those entries would have made at least a prima facie sale by him to the corporation of the stock, and of course, notice to him that he was receiving assets of the company, his vendee, in payment for it. . . . Henderson says to all this that he did not keep this book, and had no knowledge of its contents. It was presumptively his duty as treasurer to have kept this book, or to have had some one to do so for him. He cannot, under the facts of this case, avoid, as against creditors of the corporation, the probative effect of these entries by invoking his own dereliction of duty."

The books, files and records of the bank are in the nature of admissions against the defendants Miller and Ostrem and "the rule is that books kept by a principal obligor as part of his duties are evidence against the surety. Williamsburg City F. Ins. Co. v. Frothingham, 122

Mass. 391; Agricultural Ins. Co. v. Keeler, 44 Conn. 161; Bricker v. Stone, 47 Mo. App. 530; 2 Enc. Ev. page 676." Brillion Lumber Co. v. Barnard, 131 Wis. 301, 111 N. W. 489.

"Upon an issue between the sureties on an agent's bond and the agent's principal, books of account kept by the agent or by his direction, and in pursuance of his duty as such agent, and pertaining to the business of his principal, are competent evidence against the sureties to show the state of the agent's accounts." 2 Enc. Ev. 676. State Bank v. Johnson, 8 S. C. L. (1 Mill, Const.) 404, 12 Am. Dec. 645; Whitmash v. Genge, 8 Barn. & C. 556, 108 Eng. Reprint, 1149; Williamsburg City F. Ins. Co. v. Frothingham, 122 Mass. 391; Bricker v. Stone, 47 Mo. App. 530.

"In American Surety Co. v. Pauly, 18 C. C. A. 644, 39 U. S. App. 254, 72 Fed. 470, affirmed in 170 U. S. 159, 42 L. ed. 987, 18 Sup. Ct. Rep. 552, an action by the receiver of a bank against a surety company to recover on its bond for loss resulting from the dishonesty of the bank's cashier, it was held that a book kept by the teller, who died before the trial, was competent evidence in connection with the course of business, upon an issue as to whether or not money had been paid in upon a certain date, to show that upon the page where such payment should have been entered they did not appear." First Nat. Bank v. Tisdale, 84 N. Y. 655; Olney v. Chadsey, 7 R. I. 224.

The appellant insists that the court erred in admitting in evidence the audit of the books of the bank for the reason that the same was incompetent, hearsay, and not the best evidence. Mr. Hammerud, who made the audit, testified as to his qualifications as an auditor and expert bookkeeper, from which it appears that he was thoroughly competent to make an audit of the books. He states, in reference to the audit report, plaintiff's exhibit 69, "It is a statement of the condition of the affairs of the bank after the examination had been made; a true statement of the condition of the bank and it is backed up by various schedules throughout the report." Respondent contends that it is a summary of what the books and records of the bank show, and admissible to aid the court for that purpose. As such it is admissible.

"The court may in its discretion permit a competent witness who has examined the books with reference to the points sought to be established to testify to the result of his examination or to present schedules

verified by his testimony showing the details of the computation he has made; where the facts sought to be proved are of such character and the books are so voluminous that the examination of each item would be very laborious." 2 Enc. Ev. 690, 691.

In reference to prepared statements, the court says:

"They were simply tabulated statements, made by competent persons, taken from voluminous and numerous claims and records which were already in evidence, made for the purpose of assisting the jury in arriving at their verdict. As such, they were competent. State v. Cadwell, 79 Iowa, 432, 44 N. W. 700; 1 Rice, Ev. 237; Von Sachs v. Kretz, 72 N. Y. 548; Bradner, Ev. 309, 310; Casey v. Ballou Bkg. Co. 98 Iowa, 707, 67 N. W. 98; 2 Rice, Ev. 745, 746 and cases cited;" State v. Brady, 100 Iowa, 191, 36 L.R.A. 693, 62 Am. St. Rep. 560, 69 N. W. 290.

See also Jordan v. Warner, 107 Wis. 539, 83 N. W. 946; Northern P. R. Co. v. Keyes (C. C.) 91 Fed. 47; San Pedro Lumber Co. v. Reynolds, 121 Cal. 74, 53 Pac. 410.

The appellant claims that the examination of the affairs of the bank did not extend back of the 21st day of July, 1920, and there may have been some defalcation prior to that time. The record shows that on the 21st day of July, 1920, the deputy state bank examiner McAneny made an examination of the bank and found from such examination that the books and records of the bank were correct and that the assets of the bank were all accounted for and shown to be intact. This, according to authorities heretofore cited, made a prima facie case that the loss occurred between the 21st day of July, 1920, and the 18th day of July, 1921, and there being no evidence to the contrary, the shortage occurred between said dates.

The appellant also contends that the terms of the bond were not complied with on the part of the bank and that the directors of the bank did not notify the appellant within five days from the time that they discovered the thefts, etc., of the defendants Miller and Ostrem. The evidence shows however, that just as soon as there was any suspicion director Reiniger went to Minneapolis and consulted the attorney for the defendant Surety Company and under his advice a Mr. Rodgers was employed as auditor who spent 11 days at the bank and later was the adviser and consulting auditor of the appellant. The record shows

that the respondent employed attorney N. J. Bothne and as soon as any information was secured from the bank examiner examining the bank the same was given to attorney Bothne who in turn forwarded it to the appellant at its office in Minneapolis, Minnesota, so that it appears from the record that the appellant was receiving the information just as soon as it was obtained and the mails could carry it to appellant's office in Minneapolis. There is no error in the finding of the trial court upon this subject.

Appellant contends that the finding that Miller and Ostrem connived together and were together responsible for the shortage is error on account of there being no allegation of connivance alleged in the complaint. We think that under all of the evidence in the case that the contention of the respondent that Miller and Ostrem were each liable for the entire shortage is correct. They were in sole charge of the bank; they admitted to the bank examiner that they had placed dummy notes, or copies of notes which had been paid, in the note pouch where they appeared as bills receivable for the purpose of covering up a shortage of some $5,000. According to the testimony of bank examiner McAneney, they were both present at an examination of the bank and further admitted that they had increased the cash $1,000, by a fictitious entry. They stated that the reserve was very low and they thought it would help matters to make it look better, "if it was increased, so they increased it $1,000." They stated that there was a shortage in bills receivable and the sum of $540, an item of interest, was credited to bills receivable instead of interest received.

The complaint in each case is exactly alike. In the case against Ostrem and the surety company, it is charged that Ostrem did unlawfully, fraudulently, dishonestly and without the knowledge or consent of the directors of the Security State Bank of Brantford, steal, embezzle, wrongfully abstract from the possession of the said Security State Bank of Brantford, and convert to his own use and benefit, certain moneys, negotiable papers, books, records, and personal property in the sum and value of $10,000, and to the loss and damage of the said Security State Bank in the said sum of $10,000. There is a like allegation in the case against Miller. If the evidence which proves this charge shows that Miller and Ostrem acted together, such showing does not make the evidence incompetent. If Miller and Ostrem had each

been charged with the entire loss, under the testimony in this case, they might each be held liable for the entire loss, and if they are each liable for the entire loss, certainly they are each liable for one half of the loss. Under the statute the plaintiff cannot recover more than he claims even when he proves more than his claim. Hence there is no merit in the defendants' contention.

It is also the contention of the appellant that a quarter section of land in the county of Sheridan was deeded to the bank by the defendant Ostrem which should be included in the assets of the bank. An examination of the record shows that the deed to this land was introduced in evidence by the defendants. The plaintiff knew nothing about any such deed. There was no record in the bank or in the books of the bank showing any such deed. It turns up at the trial in the hands of the defendant surety company. The only evidence in relation to this deed is given, under objections, by the witness Anderson on cross-examination, which is found on pages 55, 56 and 57 of the transcript. On page 55, Mr. Anderson is asked: "Do you know anything about this property out in the western part of the state?" Objected to—"not proper cross-examination; no proper foundation laid; incompetent, irrelevant and immaterial." Objection overruled. "A. Yes, I do." I knew when that was deeded to the bank; I do not know the date. "Q. Was it after the bank was closed or before?" "A. Yes, sir." "Q. Who deeded it to the bank if you remember?" "A. That I couldn't say. I wasn't there when the deed was made." I suppose it was Ostrem's land, "as I had it in mind it was collateral to his notes, that the bank held against Ostrem; as sort of a security for the payment of these notes. That was my understanding of it." I dont know who he made the deal with; I dont know anything about that part of it at all. I couldn't tell you when. This evidence was brought out by the defendant, surety company. It is the only evidence that there is concerning the deed which was introduced in evidence by the defendant and which shows on its face that there is a thousand dollar mortgage on the land. It does not increase the assets of the bank, for, under the testimony as brought out by the defendant's counsel, it is only collateral to Ostrem's notes, amounting to $4,695, which notes are listed as assets of the bank.

The defendant, surety company, also claims that there are a large

number of notes belonging to the bank which are not listed in the assets, and there is a discrepancy between the assets as listed by deputy bank examiner and the auditor, Mr. Hammerruud. The bank had been in the hands of a receiver for a year when it was determined to have the books of the bank audited, and Mr. Hammerruud, after a thorough showing as to his qualifications as an auditor states, that on account of erroneous entries that had been made, corrections were necessary to make the books show the exact facts of the business, and there was a reposting of all the daily balances beginning March 27, 1920 to July 18, 1921, the time the bank closed; that the statement as shown after reposting daily balances up to July 18, 1921, represents the controlling accounts of the daily balances as shown after all daily sheets for the period from March 27, 1920 to July 18, 1921, had been reposted and the correct balances brought down and after carefully checking and reposting all daily balances to the controlling account, we brought down the correct balance as shown by the statements and I found the correct balance should be $118,819.30, using their figures. "Q. According to their own figures?" "A. Yes." He then goes on to show other corrections reducing the amount to $118,561.54, and the further correction of interest of $540, erroneously credited to loans and discounts, which should have been an asset to the bank instead of a liability. The auditor takes up each note listed in his report and not listed in the deputy examiner's report and every note which is listed in the examiner's report and not listed in the auditor's report, and follows the same through the books of the bank and accounts for the discrepancies by showing payments in whole or in part, or by tracing notes into other notes and through erroneous entries in the books of the bank, and after a thorough reposting and correction of the bank books made from their own daily balance sheets. He had the reports of the bank examiner; he had the books of the bank; he had the daily balance sheets and the corrected entries, and discrepancies were explained by the auditor by reference to the books of the bank and the records which the bank officers left, to the satisfaction of the referee, the trial court, and to this court.

It is the settled law in this state that if a law action tried by the court is brought to this court for review it comes like a legal conclusion, with all the presumptions in favor of its correctness, and that the

burden rests upon the party alleging error to demonstrate the existence of such error. He must be able to show this court that such findings are against the preponderance of the testimony. Ruettell v. Greenwich Ins. Co. 16 N. D. 546, 113 N. W. 1029; Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 257, 100 N. W. 717.

The judgment of the lower court in both cases is affirmed.

CHRISTIANSON, Ch. J., and BIRDZELL, JOHNSON, and NUESSLE, JJ., concur.